**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

UNITED STATES OF AMERICA,

v.                                                                  Case No. 5:24-cr-39-TPB-PRL

ANTHONY DONNELL PEW,

      Defendant.
_____/

**<u>ORDER GRANTING IN PART DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE AND AMENDED MOTION TO SUPPRESS EVIDENCE</u>**

      This matter is before the Court on Defendant's motion to suppress evidence and amended motion to suppress evidence, filed by counsel on January 21, 2025, and on February 24, 2025, respectively. (Docs. 44; 60). On February 4, 2025, the United States of America filed a response in opposition to the motion. (Doc. 54). On March 27, 2025, the Court held a hearing to address this matter. (Doc. 78; 81). Following the hearing, the parties submitted supplemental briefing. (Docs. 82; 83). After reviewing the motion, response, testimony, evidence, legal arguments, supplemental briefing, court file, and the record, the Court finds as follows:

<u>Background</u>

      The facts are largely undisputed, and much of this police encounter is captured on police body-camera footage. On February 28, 2023, at around 10:00 pm, Officer Roubicek of the Eustis Police Department was patrolling the areas of Wall Street and Harlem Avenue in Eustis, Florida. He observed two vehicles – including a white Volvo SUV – leave a residence that is known as one of the area's

high drug-trafficking houses and is owned by Defendant's family. Officer Roubicek decided to follow the white Volvo SUV. While following the vehicle, and outside of the city limits of Eustis, Officer Roubicek ran the license plate through StateLink, a law enforcement database that is incorporated with other law enforcement databases including NCIC, FCIC, the National Information Center, and the Florida Crime Information Center. The StateLink database indicated that the vehicle tag was expired, and that the vehicle had been reported as stolen out of Philadelphia.[1]

Officer Roubicek informed dispatch of the allegedly stolen vehicle, and other officers were dispatched to assist in a traffic stop. Officer Roubicek initiated the traffic stop at 2850 East Bates Avenue, which is also outside of the city of Eustis. The car came to a stop at a residence near the intersection of East Bates Avenue and the Bypass, also out of the Eustice Police Department's jurisdiction. Officer Roubicek informed Defendant – the driver and sole occupant of the vehicle – that the stop was based on an expired registration for officer safety reasons because Officer Roubicek was still alone at the time, and stolen vehicles create a high-risk traffic stop.

Other officers appeared on the scene, including Officer Rapp, who directed Defendant to exit the vehicle. At that time, Officers Roubicek and Officer Rapp jointly took Defendant into custody because, as Officer Roubicek testified, "the Eustis dispatch center informed us that the vehicle is stolen, at that point, since

---

[1] It appears that the vehicle was reported stolen in Pennsylvania on April 18, 2022, but it was recovered in Atlanta on April 19, 2022. The rental car company believed that it appropriately notified law enforcement of the recovery on September 21, 2022, but it appears that at least one law enforcement database was not appropriately updated.

he's the sole occupant, he was removed from the vehicle and placed in handcuffs."[2] Officer Roubicek told the dispatcher that the driver had been arrested for a stolen vehicle.

Before placing Defendant in the patrol car, the officers searched his pockets and discovered $1,435. Defendant advised the officers that there was more cash in the vehicle's center console, and he asked the officers to get his jewelry out of the vehicle's center console. Officer Rapp claims that he smelled the odor of marijuana since he was at the driver's door, but this information was not included in his report, and no other officers have mentioned the odor of marijuana.[3] In the meantime, Officer Rapp conducted a "basic" search of the vehicle but did not locate anything of evidentiary value. Officer Rapp popped off a plastic panel by the center console on the driver side and found a bag of marijuana and a Smith & Wesson firearm. A further search revealed a Ruger firearm under the driver's seat, which dispatch advised was reported stolen out of Lake County.

Defendant was arrested and initially charged with grand theft auto, grand theft of a firearm, possession of a firearm by a convicted felon, and possession of marijuana (less than 28 grams). On August 11, 2023, the state filed a *nolle prosequi* dismissing the charges against Defendant. The firearms were swabbed for DNA and subsequently compared to a buccal swab from Defendant, which confirmed a

---

[2] When asked if the stolen vehicle report gave a suspect or original renter for the vehicle, dispatch responded that it just listed the rental car company as the one who filed the report.
[3] In fact, Officer Roubicek specifically testified that he did not detect the odor of marijuana in the vehicle.

possible match. On April 2, 2024, a federal grand jury indicted Defendant on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).

In his motion, Defendant challenges the legality of the stop and his subsequent arrest. He argues that the officers did not have reasonable suspicion or probable cause to believe that he had stolen a vehicle or was driving with an expired tag, and that the officers made an unauthorized out-of-jurisdiction arrest. Defendant contends that because the stop and arrest were illegal, all evidence derived from the stop and arrest must be suppressed.

## Analysis

A law enforcement officer may briefly detain an individual for the purpose of investigating a crime if the officer has "a reasonable, articulable suspicion based on objective facts that the individual has engaged in, or is about to engage in, criminal activity." *United States v. Cherry*, No. 1:18-cr-503-SCJ-JFK, 2019 WL 8757214, at *3 (N.D. Ga. Dec. 26, 2019) (citing *Terry*, 392 U.S. at 20-22; *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007)). The Eleventh Circuit generally applies four non-exclusive factors when considering the line between a *Terry* stop and an arrest: "the law enforcement purposes served by the detention, the diligence with which the police pursue the investigation, the scope and intrusiveness of the investigation, and the duration of the detention." *United States v. Acosta*, 363 F.3d 1141, 1146 (11th Cir. 2004) (quoting *United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000)).

Here, officers had an articulable, reasonable suspicion that Defendant was driving a stolen vehicle based on the database information listing the vehicle as stolen, which was confirmed by dispatch at that time. Because there was reasonable suspicion to believe that the car may have been stolen, it was appropriate for officers to pursue the vehicle out of their jurisdiction and to detain Defendant for further investigation. The initial stop was valid.

But Defendant also contends that even if the initial stop was valid, it evolved into an arrest without probable cause. "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Boyd*, 388 F. App'x 943, 947 (11th Cir. 2010) (quoting *United States v. Gordon*, 231 F.3d 750, 758 (11th Cir. 2000)). When examining probable cause, the court considers the totality of the circumstances. *See id.* (citing *United States v. Lyons*, 403 F.3d 1248, 1253 (11th Cir. 2005)).

A database reported the vehicle as stolen two years prior. A report of this nature could conceivably provide probable cause for an officer to believe that the vehicle had been stolen, particularly if there were no contradictory evidence or information available at the scene. However, in this case, the officers were aware that the car had been reported as stolen *two years earlier*. Moreover, Defendant had immediately informed officers that the vehicle was a rental car, and he provided them with a copy of a rental agreement. *See, e.g.,* (Doc. 79-2). The rental agreement was facially valid and reflected that *the car had been rented the week*

*prior by Defendant's wife*, and that it was not yet due to be returned. The Defendant and his wife share a common last name. Based on these facts, it is difficult to understand how Officer Roubicek could have had an objective and reasonable belief that the car was stolen by this suspect at that time. At the very least, further investigation was needed. But rather than conduct any additional investigation, such as attempting to contact the rental car company that had reported the car as stolen, Officer Roubicek decided to arrest Defendant based solely on the database report despite the conflicting information provided by Defendant.

Because Defendant provided a copy of a facially valid rental agreement, the officers did not have probable cause to either believe that the vehicle was stolen, or to detain or arrest Defendant for the alleged offense of grand theft auto at that time because these circumstances simply did not give rise to an objectively reasonable belief that the vehicle was stolen. At best, the database record may have provided the officer with reasonable suspicion that warranted further investigation, but the database record on its own – without corroboration and in light of the conflicting information provided by Defendant – is not enough to establish probable cause under the facts presented here. And because there was no probable cause to believe the vehicle was stolen at the time of the search (or that Defendant stole the vehicle), the search of the vehicle is invalid, and the evidence found as a result of the search must be excluded.

The Government alternatively argues that an odor of marijuana coming from the vehicle established probable cause to search the vehicle. Officer Rapp testified

at the suppression hearing that he smelled the odor of marijuana while he was at the driver's door before beginning the search. However, this information contradicted Officer Rapp's report, which indicated that he smelled marijuana *after* he entered the vehicle and began his search. In addition, Officer Roubicek specifically testified that 1) he himself did not smell the odor of marijuana although he also approached the vehicle and interacted with Defendant, and 2) Officer Rapp detected the odor of marijuana *while Officer Rapp was already searching the vehicle*. No other officers on the scene mentioned the odor of marijuana, and the odor of marijuana is not mentioned at all on any of the law enforcement body-camera footage. In light of these contradictions, the Court ultimately cannot find Officer Rapp's hearing testimony on this point – that he smelled the odor of marijuana prior to the search – to be sufficiently credible.

The Government also argues that the evidence would have inevitably been discovered through lawful means – that is, an inventory search of a lawfully impounded car. But here, under these facts, it does not appear that police had the authority to impound the car because there was no good faith belief that the vehicle was stolen or that Defendant had stolen the vehicle, as discussed above.

The Government attempts to rely on the good faith exception to the exclusionary rule to argue that the evidence should not be excluded because although the information from the law enforcement database regarding the vehicle's stolen status was in error, the police conduct was not sufficiently culpable to warrant exclusion of the evidence. The Court does not believe the good faith

exception to the exclusionary rule is applicable here. Had the officers taken any other concrete steps to attempt to confirm the status of the vehicle, such as calling the rental car company, the outcome may have been different. In addition, the Court notes that Officer Perry advised that, based on the totality of the circumstances, he did not believe there was enough evidence to charge Defendant with stealing the car, but Officer Roubicek responded that he was going to charge him anyway, and if it got later dropped in the legal system, so be it.

As such, the Court concludes that the initial traffic stop was valid because it was based on reasonable suspicion that the vehicle was stolen, but that the automobile search is invalid because it was not supported by probable cause. Consequently, Defendant's motion to suppress evidence and amended motion to suppress evidence is hereby **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

**DONE** and **ORDERED** in Chambers, in Ocala, Florida, this 23rd day of May, 2025.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE